LIONEL Z. GLANCY (#134180)
ROBERT V. PRONGAY (#270796)
LESLEY F. PORTNOY (#304851)
CHARLES H. LINEHAN (#307439)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY LEONE, Individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>TEVA PHARMACEUTICAL INDUSTRIES LIMITED, EREZ VIGODMAN, EYAL DESHEH, and KOBI ALTMAN,<br><br>  Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Anthony Leone ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Teva Pharmaceutical Industries Limited ("Teva" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired the American Depositary Shares ("ADSs") of Teva between February 10, 2014 and November 3, 2016, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws

CLASS ACTION COMPLAINT
1

and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5)This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

3.      Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Defendants conduct business and operate facilities in this district, and a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

4.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

5.      Plaintiff, as set forth in the accompanying Certification, purchased Teva ADSs at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

6.     Defendant Teva primarily develops, manufactures, markets, and distributes generic medicines and a portfolio of specialty medicines. The Company is incorporated in Israel and its principal executive offices are located at 5 Basel Street, P.O. Box 3190, Petach Tikva 4951033, Israel. Upon information and belief, the Company operates facilities in this district at Irvine, CA. Teva ADSs are traded on the New York Stock Exchange ("NYSE") under the ticker symbol "TEVA."

7.     Defendant Erez Vigodman ("Vigodman") has been the Chief Executive Officer ("CEO") and President of Teva since February 11, 2014.

8.     Defendant Eyal Desheh ("Desheh") has been the Chief Financial Officer ("CFO") and Group Executive Vice President at Teva since July 2008 and 2012 respectively.

9.     Defendant Kobi Altman ("Altman") served as Teva's Acting CFO from October 21, 2013 to February 11, 2014.

10.    Defendants Vigodman, Desheh, and Altman are sometimes referred to herein as the "Individual Defendants."

11.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

CLASS ACTION COMPLAINT

3

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

12.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of respondeat superior and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under respondeat superior and agency principles.

CLASS ACTION COMPLAINT

4

14.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading Statements

15.     On February 10, 2014, Teva filed a Form 20-F with the SEC for the quarter and year ended December 31, 2013 (the "2013 20-F"). For the quarter ended December 31, 2013, Teva recorded net income of $380 million, or $0.45 per diluted share, on revenue of $5.43 billion, compared to net income of $320 million, or $0.37 per diluted share, on revenue of $5.25 billion for the same quarter in the prior year. For the year ended December 31, 2013, Teva recorded net income of $1.27 billion, or $1.49 per diluted share, on revenue of $20.31 billion, compared to net income of $1.96 billion, or $2.25 per diluted share, on revenue of $20.32 billion for 2012.

16.     The 2013 20-F touted Teva's leading market position for generic medicines, stating in pertinent part:

> We are the leading generic drug company in the United States. We market approximately 375 generic products in more than 1,100 dosage strengths and packaging sizes, including oral, injectables and inhaled products. We believe that the breadth of our product portfolio provides us with a strategic advantage, particularly as consolidation continues among purchasers, including large drugstore chains, wholesaling organizations, buying groups and managed care providers. Our growth strategy focuses on complex generic products that provide added value to our patients and customers, utilizing new and advanced technologies.
>
> *Marketing and Sales.* In the United States, our wholesale and retail selling efforts are supported by advertising in professional journals

and leading pharmacy websites, as well as participating in key medical and pharmaceutical conferences. We continue to strengthen consumer awareness about the benefits of generics through partnerships and digital marketing programs.

A substantial majority of our U.S. generic sales are made to retail drug chains and wholesalers, which continue to undergo significant consolidation and globalization.

Our customer-centric approach to research and development, sales, and operations, has provided mutual strategic advantages to our customers. We are committed to the success of our customers in this segment and focus closely on them as important business partners.

*Competitive Landscape.* In the United States, we are subject to intense competition in the generic drug market from other domestic and foreign generic drug manufacturers, brand-name pharmaceutical companies through lifecycle management initiatives, authorized generics, existing brand equivalents and manufacturers of therapeutically similar drugs. Price competition from additional generic versions of the same product typically results in margin pressures. ***We believe that our primary competitive advantages are our ability to continually introduce new and complex generic equivalents for brand-name drug products on a timely basis, our quality and cost-effective production, our customer service and the breadth of our product line. We believe we have a focused and competitive pricing strategy.***

[Emphasis added.]

17.    The 2013 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Desheh and Altman attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

CLASS ACTION COMPLAINT

6

18. On May 2, 2014, Teva filed a report on Form 6-K with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2014 (the "Q1 2014 6-K"). For the quarter, Teva reported net income of $744 million, or $0.87 per diluted share, on revenue of $5 billion, compared to net income of $630 million, or $0.74 per diluted share, on revenue of $4.9 billion for the same period in the prior year.

19. The Q1 2014 6-K touted Teva's U.S. generic medicine revenues, stating in pertinent part:

> **United States Generic Medicine Revenues**
>
> In the first quarter of 2014, we led the U.S. generic market in total prescriptions and new prescriptions, with total prescriptions of approximately 512 million, representing 15.0% of total U.S. generic prescriptions. We intend to continue our U.S. market leadership based on our ability to introduce new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, the breadth of our product line, our commitment to quality and regulatory compliance and cost-effective production.

20. On July 31, 2014, Teva filed a report on Form 6-K with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2014 (the "Q2 2014 6-K"). For the quarter, Teva reported net income of $748 million, or $0.87 per diluted share, on revenue of $5.05 billion, compared to a net loss of $452 million, or $0.53 per diluted share, on revenue of $4.92 billion for the same period in the prior year.

CLASS ACTION COMPLAINT

7

21.     The Q2 2014 6-K touted Teva's U.S. generic medicine revenues, stating in pertinent part:

### United States Generic Medicine Revenues

In the second quarter of 2014, we led the U.S. generic market in total prescriptions and new prescriptions, with total prescriptions of approximately 508 million, representing 14.7% of total U.S. generic prescriptions. We intend to continue our U.S. market leadership based on our ability to introduce new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, the breadth of our product line, our commitment to quality and regulatory compliance and cost-effective production.

22.     On October 30, 2014, Teva filed a report on Form 6-K with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2014 (the "Q3 2014 6-K"). For the quarter, Teva reported net income of $876 million, or $1.02 per diluted share, on revenue of $5.06 billion, compared to net income of $711 million, or $0.84 per diluted share, on revenue of $5.06 billion for the same period in the prior year.

23.     The Q3 2014 6-K touted Teva's U.S. generic medicine revenues, stating in pertinent part:

### United States Generic Medicine Revenues

In the third quarter of 2014, we led the U.S. generic market in total prescriptions and new prescriptions, with total prescriptions of approximately 504 million, representing 14.4% of total U.S. generic prescriptions. We intend to continue our U.S. market leadership based on our ability to introduce new generic equivalents for brand-name

CLASS ACTION COMPLAINT

8

products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, the breadth of our product line, our commitment to quality and regulatory compliance and cost-effective production.

24.     On February 9, 2015, Teva filed a Form 20-F with the SEC for the quarter and year ended December 31, 2014 (the "2014 20-F"). For the quarter ended December 31, 2014, Teva reported net income of $687 million, or $0.80 per diluted share, on revenue of $5.17 billion, compared to net income of $380 million, or $0.45 per diluted share, on revenue of $5.43 billion for the same period in the prior year. For the year ended December 31, 2014, Teva reported net income of $3.06 billion, or $3.56 per diluted share, on revenue of $20.27 billion, compared to net income of $1.27 billion, or $1.49 per diluted share, on revenue of $20.31 billion for 2013.

25.     The 2014 20-F touted Teva's leading market position for generic medicines, stating in pertinent part:

We are the leading generic drug company in the United States. We market approximately 375 generic products in more than 1,100 dosage strengths and packaging sizes, including oral, injectables and inhaled products. We believe that the breadth of our product portfolio provides us with a strategic advantage, particularly as consolidation continues among purchasers, including large drugstore chains, wholesaling organizations and buying groups. Our growth strategy focuses on a carefully selected portfolio of products that will provide added value to our customers, payors and patients, utilizing new and advanced technologies.

In the United States, we are subject to intense competition in the generic drug market from domestic and international generic drug manufacturers, brand-name pharmaceutical companies through

CLASS ACTION COMPLAINT
9

lifecycle management initiatives, authorized generics, existing brand equivalents and manufacturers of therapeutically similar drugs. Price competition from additional generic versions of the same product typically results in margin pressures. *We believe that our primary competitive advantages are our ability to continually introduce new and complex generic equivalents for brand-name drug products on a timely basis, our quality, our customer service and the breadth of our product portfolio. We believe we have a focused and competitive pricing strategy.*

A substantial majority of our U.S. generic sales are made to retail drug chains and wholesalers, which continue to undergo significant consolidation and globalization. Our portfolio selection, breadth of products offerings and our global network capabilities, have provided mutual strategic advantages to our customers. We are committed to the success of our customers and work closely with them as important business partners.

In the United States, our wholesale and retail selling efforts are supported by advertising in professional journals and on leading pharmacy websites, as well as participating in key medical and pharmaceutical conferences. We continue to strengthen consumer awareness of the benefits of generics through partnerships and digital marketing programs.

[Emphasis added.]

26.    The 2014 20-F contained signed certifications pursuant to SOX by Defendants Vigodman and Desheh attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

27.    On April 30, 2015, Teva filed a report on Form 6-K with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q1 2015 6-K"). For the quarter, Teva reported net income of $446

CLASS ACTION COMPLAINT

million, or $0.52 per diluted share, on revenue of $4.98 billion, compared to net income of $744 million, or $0.87 per diluted share, on revenue of $5 billion for the same period in the prior year.

28.     The Q1 2015 6-K touted Teva's U.S. generic medicine revenues, stating in pertinent part:

**United States Generic Medicine Revenues**

In the first quarter of 2015, we continued to lead the U.S. generic market in total prescriptions and new prescriptions, with total prescriptions of approximately 488 million, representing 13.7% of total U.S. generic prescriptions. We seek to continue our U.S. market leadership by introducing new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, the breadth of our product line, our commitment to quality and regulatory compliance and our cost-effective production.

29.     On July 30, 2015, Teva filed a report on Form 6-K with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 6-K"). For the quarter, Teva reported net income of $539 million, or $0.63 per diluted share, on revenue of $4.97 billion, compared to net income of $748 million, or $0.87 per diluted share, on revenue of $5.05 billion for the same period in the prior year.

30.     The Q2 2015 6-K touted Teva's U.S. generic medicine revenues, stating in pertinent part:

***United States Generic Medicine Revenues***

In the second quarter of 2015, we continued to lead the U.S. generic market in total prescriptions and new prescriptions, with total prescriptions of approximately 483 million, representing 13.5% of total U.S. generic prescriptions. We seek to continue our U.S. market leadership by introducing new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, our broad product line, our commitment to quality and regulatory compliance and our cost-effective production.

31.    On October 29, 2015, Teva filed a report on Form 6-K with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2015 (the "Q3 2015 6-K"). For the quarter, Teva reported net income of $103 million, or $0.12 per diluted share, on revenue of $4.82 billion, compared to net income of $876 million, or $1.02 per diluted share, on revenue of $5.06 billion for the same period in the prior year.

32.    The Q3 2015 6-K touted Teva's U.S. generic medicine revenues, stating in pertinent part:

***United States Generic Medicine Revenues***

In the third quarter of 2015, we continued to lead the U.S. generic market in total prescriptions and new prescriptions, with approximately 481 million total prescriptions, representing 13.4% of total U.S. generic prescriptions. We seek to continue our U.S. market leadership by introducing new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, our

CLASS ACTION COMPLAINT
12

broad product line, our commitment to quality and regulatory compliance and our cost-effective production.

33.    On February 11, 2016, Teva filed a Form 20-F with the SEC for the quarter and year ended December 31, 2015 (the "2015 20-F"). For the quarter ended December 31, 2015, Teva reported net income of $500 million, or $0.55 per diluted share, on revenue of $4.88 billion, compared to net income of $687 million, or $0.80 per diluted share, on revenue of $5.17 billion for the same period in the prior year. For the year ended December 31, 2015, Teva reported net income of $1.59 billion, or $1.82 per diluted share, on revenue of $19.65 billion, compared to net income of $3.06 billion, or $3.56 per diluted share, on revenue of $20.27 billion for 2014.

34.    The 2015 20-F touted Teva's leading market position for generic medicines, stating in pertinent part:

> We are the leading generic drug company in the United States. We market approximately 370 generic products in more than 1,100 dosage strengths and packaging sizes, including oral, injectable and inhaled products. We believe that the breadth of our product portfolio provides us with a strategic advantage, particularly as consolidation continues among purchasers, including large drugstore chains, wholesaling organizations and buying groups. Our growth strategy focuses on a portfolio of products that will provide added value to our customers, payors and patients, utilizing new and advanced technologies.

> In the United States, we are subject to intense competition in the generic drug market from domestic and international generic drug manufacturers, brand-name pharmaceutical companies through lifecycle management initiatives, authorized generics, existing brand equivalents and manufacturers of therapeutically similar drugs. Price competition from additional generic versions of the same product

typically results in margin pressures. ***We believe that our primary competitive advantages are our ability to continually introduce new and complex generic equivalents for brand-name drug products on a timely basis, our quality, our customer service and the breadth of our product portfolio. We believe we have a focused and competitive pricing strategy.***

A substantial majority of our U.S. generic sales are made to retail drug chains and wholesalers, which continue to undergo significant consolidation and globalization. Our portfolio selection, breadth of products offerings and our global network capabilities, have provided mutual strategic advantages to our customers. We are committed to the success of our customers and work closely with them as important business partners.

In the United States, our wholesale and retail selling efforts are supported by advertising in professional journals and on leading pharmacy websites, as well as participating in key medical and pharmaceutical conferences. We continue to strengthen consumer awareness of the benefits of generics through partnerships and digital marketing programs.

[Emphasis added.]

35.     The 2015 20-F contained signed certifications pursuant to SOX by Defendants Vigodman and Desheh attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

36.     On May 9, 2016, Teva filed a report on Form 6-K with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 6-K"). For the quarter, Teva reported net income of $636 million, or $0.62 per diluted share, on revenue of $4.81 billion, compared to net

income of $446 million, or $0.52 per diluted share, on revenue of $4.98 billion for the same period in the prior year.

37.    The Q1 2016 6-K touted Teva's U.S. generic medicines revenues, stating in pertinent part:

### United States Generic Medicines Revenues

In the first quarter of 2016, we continued to lead the U.S. generic market in total prescriptions and new prescriptions, with approximately 463 million total prescriptions, representing 12.7% of total U.S. generic prescriptions. We seek to continue our U.S. market leadership based on our ability to introduce new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, the breadth of our product line, our commitment to quality and regulatory compliance and our costeffective production, including through our pending acquisition of Actavis Generics.

38.    On August 4, 2016, Teva filed a report on Form 6-K with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 2016 6-K"). For the quarter, Teva reported net income of $254 million, or $0.20 per diluted share, on revenue of $5.04 billion, compared to net income of $539 million, or $0.63 per diluted share, on revenue of $4.97 billion for the same period in the prior year.

39.    The Q2 2016 6-K touted Teva's U.S. generic medicine revenues, stating in pertinent part:

CLASS ACTION COMPLAINT
15

***United States Generic Medicine Revenues***

In the second quarter of 2016, we continued to lead the U.S. generic market in total prescriptions and new prescriptions, with approximately 446 million total prescriptions, representing 12.1% of total U.S. generic prescriptions. We seek to continue our U.S. market leadership based on our ability to introduce new generic equivalents for brand-name products on a timely basis, with a focus on complex generics and other high-barrier products that we believe will create more value for patients and customers, our strong emphasis on customer service, the breadth of our product line, our commitment to quality and regulatory compliance and our costeffective production, including through our recent acquisition of Actavis Generics, which will substantially expand our generics operations and pipeline.

40.     The statements referenced in ¶¶ 16 - 40 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Teva and several of its pharmaceutical industry peers colluded to fix generic drug prices; (2) the foregoing conduct constituted a violation of federal antitrust laws; (3) consequently, Teva's revenues during the Class Period were in part the result of illegal conduct; and (4) as a result, Teva's public statements were materially false and misleading at all relevant times.

## **The Truth Emerges**

41.     On August 4, 2016, the Company filed a Form 6-K with the SEC which was signed by Defendant Desheh. The Form 6-K discussed government

investigations relating to Teva's pricing and marketing, disclosing that the company's

subsidiary, Teva USA, received two subpoenas, stating in relevant part:

42.     On June 21, 2015, Teva USA received a subpoena from the Antitrust

Division of the United States Department of Justice seeking documents and other

information relating to the marketing and pricing of certain of Teva USA's generic

products and communications with competitors about such products. On July 12,

2016, Teva USA received a subpoena from the Connecticut Attorney General seeking

documents and other information relating to potential state antitrust law violations.

Teva is cooperating fully with these requests.

43.     On this news, Teva's ADSs fell $1.24 per share from its previous closing

price, to close at $54.21 per share on August 5, 2016, damaging investors.

44.     On November 3, 2016, *Bloomberg* published the article "U.S. Charges in

Generic-Drug Probe to Be Filed by Year End" which discussed the DOJ's two year

investigation of suspected price collusion by several pharmaceutical companies,

including Teva, which will likely result in prosecutors filing criminal charges by the

end of the year, stating in part:

> U.S. prosecutors are bearing down on generic pharmaceutical
> companies in a sweeping criminal investigation into suspected price
> collusion, a fresh challenge for an industry that's already reeling from
> public outrage over the spiraling costs of some medicines.
>
> The antitrust investigation by the Justice Department, begun about
> two years ago, now spans more than a dozen companies and about
> two dozen drugs, according to people familiar with the matter. The

grand jury probe is examining whether some executives agreed with one another to raise prices, and the first charges could emerge by the end of the year, they said.

Though individual companies have made various disclosures about the inquiry, they have identified only a handful of drugs under scrutiny, including a heart treatment and an antibiotic. Among the drugmakers to have received subpoenas are industry giants Mylan NV and Teva Pharmaceutical Industries Ltd. Other companies include Actavis, which Teva bought from Allergan Plc in August, Lannett Co., Impax Laboratories Inc., Covis Pharma Holdings Sarl, Sun Pharmaceutical Industries Ltd., Mayne Pharma Group Ltd., Endo International Plc's subsidiary Par Pharmaceutical Holdings and Taro Pharmaceutical Industries Ltd.

*       *       *

Although it isn't illegal for companies to raise prices at the same time, it's against the law for competitors to agree to set prices or coordinate on discounts, production quotas or fees that affect prices. The federal government can prosecute companies for collusion and seek penalties and potentially send executives to jail.

Charges could extend to high-level executives, according to the people. The antitrust division, which has an immunity program to motivate wrongdoers to confess and inform on others, has stepped up its commitment to holding individuals responsible.

*       *       *

Generic drug companies are also contending with a civil price-fixing investigation by Connecticut Attorney General George Jepsen. Jepsen is seeking to lead a group of states to probe the industry, which could result in cases seeking damages, according to people familiar with the matter. A spokesman for the Connecticut Attorney General's office declined to comment.

The first subpoenas in the generics investigation were issued by Connecticut in July 2014, while the Justice Department followed in November, according to regulatory filings by the companies. The investigations initially focused on mid-sized U.S. companies and have since extended to the biggest manufacturers and U.S. subsidiaries of overseas companies.

CLASS ACTION COMPLAINT
18

45.     On this news, Teva ADSs fell $4.13 per share, or over 9.5%, from its previous closing price to close at $39.20 per share on November 3, 2016, damaging investors.

46.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADSs, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Teva ADSs traded on the NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

48.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Teva ADSs were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners

and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

49.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

50.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

51.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements

made, in light of the circumstances under which they were made, not
misleading;

- whether the Individual Defendants caused the Company to issue false
  and misleading SEC filings and public statements during the Class
  Period;

- whether Defendants acted knowingly or recklessly in issuing false and
  misleading SEC filings and public statements during the Class Period;

- whether the prices of Teva ADSs during the Class Period were
  artificially inflated because of the Defendants' conduct complained of
  herein; and

- whether the members of the Class have sustained damages and, if so,
  what is the proper measure of damages.

52.    A class action is superior to all other available methods for the fair and
efficient adjudication of this controversy since joinder of all members is
impracticable. Furthermore, as the damages suffered by individual Class members
may be relatively small, the expense and burden of individual litigation make it
impossible for members of the Class to individually redress the wrongs done to them.
There will be no difficulty in the management of this action as a class action.

53.    Plaintiff will rely, in part, upon the presumption of reliance established
by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material
  facts during the Class Period;

- the omissions and misrepresentations were material;

- Teva ADSs are traded in efficient markets;

CLASS ACTION COMPLAINT

- the Company's ADSs were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's ADSs; and

- Plaintiff and members of the Class purchased and/or sold Teva ADSs between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

54.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

55.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

<u>**COUNT I**</u>
**Violation of Section 10(b) of The Exchange Act and Rule 10b-5**
<u>**Against All Defendants**</u>

56.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.    This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

58.    During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

59.    The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Teva ADSs during the Class Period.

60.    The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and

knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

61.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

62.     As a result of the foregoing, the market price of Teva ADSs was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Teva ADSs during the Class Period in purchasing Teva ADSs at

prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

63.    Had Plaintiff and the other members of the Class been aware that the market price of Teva ADSs had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased Teva ADSs at the artificially inflated prices that they did, or at all.

64.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

65.    By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Teva ADSs during the Class Period.

**COUNT II**
**Violation of Section 20(a) of The Exchange Act**
**Against The Individual Defendants**

66.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

68.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

69.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Teva ADSs.

70. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

71. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: December 27, 2016                  Respectfully submitted,

                                                          **GLANCY PRONGAY & MURRAY LLP**

                                                          By: */s/ Robert V. Prongay*
                                                          Lionel Z. Glancy
                                                          Robert V. Prongay
                                                          Lesley F. Portnoy
                                                          Charles H. Linehan
                                                          1925 Century Park East, Suite 2100
                                                          Los Angeles, CA 90067
                                                          Telephone: (310) 201-9150
                                                          Facsimile: (310) 201-9160
                                                          Email: info@glancylaw.com

                                                          *Attorneys for Plaintiff*

# CERTIFICATION PURSUANT
# <u>TO FEDERAL SECURITIES LAWS</u>

 1. I, _Anthony Leone_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

 2. 1 have reviewed a Complaint against Teva Pharmaceutical Industries Ltd. ("Teva" or the "Company") and, authorize the filing of a motion on my behalf for appointment as lead plaintiff.

 3. I did not purchase or acquire Teva securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

 4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Teva securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

 5. To the best of my current knowledge, the attached sheet lists all of my transactions in Teva securities during the Class Period as specified in the Complaint.

 6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

 7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

 8. I declare under penalty of perjury that the foregoing is true and correct.

Executed    12·23·16
              **(Date)**

              **(Signature)**

ANTHONY LEONE

       **(Type or Print Name)**

Purchases:

| Date | Quantity | Price |
| --- | --- | --- |
| 09/29/2016 | 200 | 48.00 |
| 09/30/2016 | 200 | 46.00 |

Sales: N/A